### DOTY, et ux v. TOWN OF PALM BEACH SHORES, et al.

Circuit Court, Palm Beach County.

October 26, 1956.

Cromwell & Remsen, Riviera Beach, for plaintiffs.

John A. Paul, West Palm Beach, for defendants.

JAMES R. KNOTT, Circuit Judge.

This cause came on for final hearing upon alternative writ of mandamus issued to the town commission and the building inspector of the town of Palm Beach Shores, the respondents' answer thereto, and the testimony submitted by the parties.

Petitioners seek to require the issuance of a building permit to construct an apartment building upon a certain parcel of land ,owned by them, designated upon the plat of the town of Palm Beach Shores as "Reserved." The proposed structure would lie in front of and beyond an extension of the front building lines applicable to the adjoining lots lying north and south of the parcel in question, as shown on the plat. The "reserved" area, one of two bearing that description which border the shore of Lake Worth, has a pier extending therefrom for about 300 feet into the lake, designed for the mooring of pleasure craft on a commercial basis; the land concerned contains a small building with an office for the landowner-dockmaster and sanitary facilities designed for the use of the boating public, erected beyond an extension of the building lines as shown on the adjoining lots. No building lines whatever are designated on the plat as to this particular area.

In a letter denying the petitioner's request for a building permit, the building inspector and chairman of the planning and zoning board of the town stated—"The original intent of the developer at the time of subdivision and filing of plat wherein this particular area and one other were designated as 'Reserved' was to provide adequate parking area for boatmen using the dock spaces and their guests. The requirements of the deed restrictions regarding multiple housing is that a space be provided for each rental plus one space for the owner, and one additional space for each group of five units. It is requested that you provide adequate parking spaces for the occupants of your docks, which will thereby eliminate the possibility of street parking. Further called to your attention are the deed restrictions under which adjoining property was sold; particularly the front building line which has been set at a point approximately in line with the rear boundary of your property."

In their answer, the respondent town officials allege that the proposed building of petitioners—(1) is in violation of the zoning ordinance of the town; (2) conflicts with certain restrictions applicable to the land included in the plat of Palm Beach Shores, as

set forth in an instrument dated January 10, 1950; and (3) would adversely affect the public welfare, safety and health, through (a) impairing an adequate supply of light and air to adjacent property, (b) diminishing property values in the surrounding area, and (c) increasing fire and traffic hazards, in view of the use of the "reserved" area by owners of vessels moored at the pier for the parking of their automobiles, and the necessity of maintaining fire lanes.

Petitioners contend that neither the plat restrictions nor the provisions of the zoning ordinance prohibit the construction of their proposed building, and that the public welfare, safety and health would not be affected thereby.

By the express terms of the instrument setting forth the plat restrictions, the same apply only to certain *numbered* lots designated therein, and not to the "reserved" areas. Parenthetically, article VIII thereof provides that the Declarer (the corporation which owned and developed the subdivision, filed the plat for record, and was petitioners' predecessor in title) "reserves unto itself * * * the fee simple title to any and all parcels or areas designated upon said plat 'Reserved'."

Respondents rely upon the following provisions of article IV of the plat restrictions, dealing with "Set Backs," with reference to their authority to designate building lines regarding the disputed area—"The Declarer shall in all cases in the event of ambiguity, absence of building lines from the plat or conflict between the plat and the written instrument have the right to determine and designate the building lines necessary to conform to the general plan of the subdivision and the Declarer's judgment and determination shall be final and binding."

Assuming, arguendo, the enforceability of the quoted provision as between the Declarer and the lot owner, the town of Palm Beach Shores is not shown to have succeeded to the rights of the Declarer in the present case, and respondents' contention in that respect therefore cannot be sustained.

It is thus apparent that the plat restrictions are not applicable to the parcel involved in this proceeding, unless made so by virtue of the town's zoning ordinance.

The zoning ordinance divides the town into three districts—residence district "A", permitting one-family dwellings and certain other limited uses; residence district "B", permitting, in addition, "apartments and multiple residences"; and residence district "C", permitting "hotels, apartments and clubs." The lots in the vicin-

ity of the parcel in dispute are zoned residence district "C", as shown by the zoning map in the office of the town clerk, but no zoning designation is afforded by the zoning map regarding the particular parcel in question. In noting the omission of this parcel from the zoning map, respondents rely upon section XII of the zoning ordinance as requiring the area to be classified as residence "A". That section provides in part as follows—

"1. * * * If, because of error or omission in the Zoning Map, any property in the Town of Palm Beach Shores, Florida, is not shown as being in a Zoning District, the classification of such property shall be Residence 'A', unless changed by amendment hereto.

"2. In the event any court of competent jurisdiction should hold that any provision of this ordinance or the zoning map which is made a part hereof, is unconstitutional or unenforcible as to any particular parcel of land or building within the Town of Palm Beach Shores, because the use allowed for such parcel of land or building under this ordinance amounts to taking property without due process of law, or for any other reason, then and in that event such piece or parcel of land or building is hereby declared to be, and is hereby, classified under the Town's zoning laws in the next less restrictive classification, that is to say, if any property be classed as Residential District 'A', and any court holds such classification to be arbitrary and unreasonable, it shall thereupon fall in Classification 'B'. If classified as Residence 'B' and any court of competent jurisdiction should hold such classification to be unconstitutional and arbitrary, the same shall thereupon fall into classification of 'C'."

The lots neighboring the disputed area being classified as residence "C", it is apparent that a different classification for this area would be arbitrary and unreasonable absent some compelling reason not disclosed by the evidence, and since petitioners' proposed apartment building meets the requirements specified by the ordinance for residence "C" construction, respondents' contention is without merit.

Section III, paragraph E-2 of the zoning ordinance provides—

"In general this ordinance adopts and makes a part hereof Articles 4 and 5 regarding setbacks and open spaces between buildings as set forth and delineated in the restrictions contained in that certain deed dated January 10, 1950 and recorded in deed book 895, page 291 of the public records of Palm Beach County, Florida; and building lines shall conform to and

be consistent with those set forth on the duly recorded plat of Palm Beach Shores and recorded in plat book 23, page 29-32 of the public records of Palm Beach County, Florida, and as shown on the Zoning Map attached to and made a part of this ordinance."

Respondents contend that since article IV prohibits structures which "encroach beyond the building lines designated on the plat," and the ordinance requires that building lines conform to and be consistent with those set forth on the plat, petitioners lack the right to construct a building of any kind on the parcel in dispute. Petitioners, in turn, urge that as a "reserved" area the parcel is not subject to the terms and provisions of the zoning ordinance in any manner or for any purpose; it appears unnecessary to decide that broad point, however. In the absence of a provision clearly and definitely prohibiting the construction of any building upon the disputed area, a presumption to that effect should not be indulged, in derogation of the usual recognized rights of a property owner. If it be conceded that the ordinance intended to grant authority to fix a building line on this parcel, where none whatever existed before, the purported authority of the municipal officers to describe a building line "consistent" with those on the plat would be subject to such uncertainty and vagueness in its interpretation that it could not be sustained as valid. See Phillips Petroleum Co. v. Anderson, 74 So. 2d 544, where the Supreme Court of Florida quoted from a previous decision, City of West Palm Beach v. State ex rel. Duffey, 30 So. 2d 491, as follows—"Zoning is an exercise of police power and ordinarily the exercise of such power in zoning has relation to structural qualities and the use of structures when considered in reference to the protection of health, welfare, safety and morals of the public. When regulations are to be imposed in order to promote health, welfare, safety and morals it is necessary that exactions be fixed in the ordinance with such certainty that they not be left to the whim or caprice of the administrative agency and the ordinance must have some relation to a lawful purpose—to promote health, welfare, safety and morals."

Neither the town's ordinances nor the plat restrictions purport to require that parking spaces be provided on the "reserved" area in question, for the automobiles of persons using the dock facilities. Parol evidence regarding the intention of the developer of the subdivision with respect to that subject is not admissible, as tending to vary the terms of a written instrument; e.g., the recorded plat. See Swanson v. Gillan (R. I.), 173 A. 122, and cases therein cited. It might be observed, further, that while the testi-

mony in the present case as to the effect of the proposed construction upon the maintenance of proper fire lanes and other matters affecting the public interest was somewhat in conflict, the evidence as a whole did not establish that the proposed construction would materially affect the public welfare, safety and health. This conclusion, however, is not intended to be construed as an adjudication of any private rights of other property owners whose interests might be affected.

The court, having considered the pleadings, the evidence submitted and argument of counsel, is satisfied that the petitioners are entitled to receive a permit for construction of their proposed apartment building, and the peremptory writ of mandamus will issue.